AUSAs Diarra M. Guthrie and Lauren Phillips

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GINA GUY, and<br>ROSANNA LISA STANLEY,<br><br>                    Defendants. | **24 MAG 2386**<br><br>SEALED COMPLAINT<br><br>Violations of 18 U.S.C. §§ 1343, 1349, 1956, and 2<br><br>COUNTY OF OFFENSE:<br>NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

      RICHARD SMYTHE, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

      1.    From at least in or about 2021 through at least in or about 2024, in the Southern District of New York and elsewhere, ROSANNA LISA STANLEY and GINA GUY, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

      2.    It was a part and an object of the conspiracy that ROSANNA LISA STANLEY and GINA GUY, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, which affected a financial institution, in violation of Title 18, United States Code, Section 1343, to wit, STANLEY and GUY engaged in a scheme to induce elderly and other vulnerable victims to transfer funds to GUY and STANLEY, under false pretenses, and which involved, among other things, the use of wires transmitted through the Southern District of New York.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Wire Fraud)

      3.    From at least in or about 2016 through at least in or about 2024, in the Southern District of New York and elsewhere, GINA GUY, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign

commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, which affected a financial institution, to wit, GUY, engaged in a scheme to induce elderly and other vulnerable victims to transfer funds to GUY, under false pretenses, and which involved, among other things, the use of wires transmitted through the Southern District of New York.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
**(Wire Fraud)**

4. From at least in or about 2009 through at least in or about 2024, in the Southern District of New York and elsewhere, ROSANNA LISA STANLEY, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, which affected a financial institution, to wit, STANLEY engaged in a scheme to induce elderly and other vulnerable victims to transfer funds to STANLEY, under false pretenses, and which involved, among other things, the use of wires transmitted through the Southern District of New York.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOUR
**(Conspiracy to Commit Money Laundering)**

5. From at least in or about 2021 through at least in or about 2024, in the Southern District of New York and elsewhere, ROSANNA LISA STANLEY and GINA GUY, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

6. It was a part and an object of the conspiracy that ROSANNA LISA STANLEY and GINA GUY, the defendants, and others known and unknown, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which transaction affected interstate and foreign commerce and involved the use of a financial institution which was engaged in, and the activities of which affected, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole and in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

## COUNT FIVE
### (Money Laundering)

7.      From at least in or about 2021 through at least in or about 2024, in the Southern District of New York and elsewhere, ROSANNA LISA STANLEY and GINA GUY, the defendants, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, conducted and attempted to conduct such a financial transaction, which transaction affected interstate and foreign commerce and involved the use of a financial institution which was engaged in, and the activities of which affected, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit, wire fraud, in violation of Title 18 United States Code, Section 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity.

(Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

8.      I am a Special Agent with the FBI and have been since approximately 2004. I am assigned to an FBI squad that investigates bank fraud, wire fraud, money laundering, and other financial crimes. During my tenure with the FBI, I have participated in numerous financial fraud investigations and have participated in all aspects of those investigations. This affidavit is based upon my personal participation in the investigation of this matter, as well as on my conversations with other law enforcement officers and my examination of documents, reports, and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during the investigation. Where the contents of documents or the actions, statements, or conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Overview of the Offense Conduct

9.      From at least in or about 2009 to at least in or about 2024, ROSANNA LISA STANLEY and GINA GUY, the defendants, defrauded at least 16 victims (the "Victims") of more than $7 million. As part of that scheme, STANLEY and GUY lured the Victims, who were nearly all elderly individuals, into purported romantic or close personal relationships through in-person meetings, phone calls, text messages, and an online dating platform. After earning the Victims' trust, STANLEY and GUY convinced the Victims to transfer money to STANLEY and GUY under false pretenses, including by, among other things, falsely representing that STANLEY and GUY needed money for fake businesses and organ transplants.

### Examples of Schemes to Defraud the Victims

#### Scheme to Defraud Victim-1

10.     Based on my discussions with other law enforcement officers, my interviews of witnesses, and my review of bank, telephone, and wireless service records, I have learned the following, in substance and in part:

3

    a. In or about February 2023, an elderly male ("Victim-1") met ROSANNA LISA STANLEY, the defendant, in Manhattan, exchanged contact information with STANLEY, and then communicated with STANLEY principally in person and by telephone.  Ultimately, Victim-1 and STANLEY entered into what Victim-1 understood to be an exclusive, romantic relationship.

    b. During the course of that purported relationship, on various occasions, STANLEY told Victim-1, in person, by phone, and by text, that STANLEY needed money for certain expenses.  STANLEY, for example, repeatedly requested that Victim-1 pay STANLEY's rent and living expenses, and Victim-1 provided STANLEY with money and things of value as gifts based on STANLEY's representations about needing money for basic necessities.

    c. At STANLEY's request, Victim-1 also provided STANLEY with Victim-1's online banking credentials for a particular credit card and provided STANLEY with the physical credit card.  STANLEY then changed Victim-1's password, would not provide Victim-1 with the new password when Victim-1 requested it, and incurred thousands of dollars of expenses on Victim-1's credit card account without Victim-1's permission.

    d. STANLEY also told Victim-1 that STANLEY owned and operated a catering business (the "Catering Business"), for which STANLEY claimed to need money.  Based on STANLEY's false representations, Victim-1 provided STANLEY with the money that STANLEY requested.

    e. In total, STANLEY defrauded Victim-1 of at least approximately $555,000.

  11. Based on my discussions with other law enforcement officers, my review of bank records, state business entity records, and publicly available information, and my interviews of witnesses, I have learned the following in substance and in part:

    a. On or about March 16, 2023, the Catering Business was incorporated in Florida.

    b. The Catering Business does not appear to operate as a legitimate business, either online, through a brick-and-mortar establishment, or through any other means.

    c. On or about March 28, 2023, a bank account was opened with a deposit of $500 in the name of "Ella's Catering," with an authorized accountholder in the name of Target Subject-2's daughter (the "Ella's Catering Bank Account").

    d. On or about March 30, 2023, at STANLEY's direction and based on her purported need for funds to support the Catering Business, Victim-1 wired approximately $40,000 to the Catering Business Bank Account from his bank account, located in Manhattan.

    e. On or about April 6, 2023, at STANLEY's direction and based on her purported need for funds to support the Catering Business, Victim-1 also provided STANLEY with a check in the amount of approximately $180,000 issued to the Catering Business.  The check was deposited into the Catering Business Bank Account.

    f. From March 2023 onward, no business-related funds were deposited into the Catering Business Bank Account. The only funds deposited into the Catering Business Bank Account were provided by Victim-1. *See supra* ¶ 11(d)-(e).

    g. Between in or about April 2023 and in or about May 2023, after STANLEY directed Victim-1 to provide STANLEY with approximately $220,000 for the Catering Business, money was then transferred from the Catering Business Bank Account to two financial institutions to pay off a loan for STANLEY's boat and to pay off a loan on one of STANLEY's luxury cars.

    h. From at least in or about 2023 through at least in or about 2024, based on the false representations of STANLEY, Victim-1 made wire transfers and issued checks that were deposited into a bank account controlled by STANLEY. The date of birth, address, and social security number associated with the holder of those bank accounts match the date of birth, address, and social security number associated with STANLEY in law enforcement records, reports, and databases.

### Scheme to Defraud Victim-2

  12. Based on my interviews with another victim in this investigation ("Victim-2") and witnesses, my discussions with other law enforcement officers, my review of law enforcement databases, reports, and records, and my review of bank and telephone records, I have learned that:

    a. In or about 2009, Victim-2 met ROSANNA LISA STANLEY, the defendant, through STANLEY's purported astrology business, located in Manhattan.

    b. Victim-2 received purported "psychic" services from STANLEY, who convinced Victim-2 that Victim-2's money was "tainted" with bad influences and that Victim-2 should transfer money to STANLEY to "untaint" and "protect" Victim-2's money of those influences, after which STANLEY would return the money to Victim-2. Over time, STANLEY also convinced Victim-2 to provide STANLEY with more and more money on the basis that STANLEY could help Victim-2 reach Victim-2's desired life.

    c. Based on the telephone and in-person conversations Victim-2 had with STANLEY, Victim-2 understood that STANLEY would eventually return Victim-2's money. Victim-2 never received any of Victim-2's money back from STANLEY.

    d. From at least in or about 2009 through at least in or about 2020, based on the false representations of STANLEY, Victim-2 made wire transfers from Victim-2's bank account located in Manhattan, issued checks, and provided cash that were deposited into bank accounts held in STANLEY's name. The date of birth, address, and social security number associated with the holder of that bank account match the date of birth, address, and social security number associated with STANLEY in law enforcement records, reports, and databases.

    e. In total, STANLEY defrauded Victim-2 of at least approximately $1,000,000.

### Schemes to Defraud Victim-3, Victim-4, Victim-5, and Victim-6

  13. Based on my interviews with four of the Victims, each of whom are elderly males

("Victim-3," "Victim-4," "Victim-5," and "Victim-6"), and witnesses, my discussions with other law enforcement officers, my review of law enforcement databases, reports, and records, and my review of bank, telephone, and wireless service provider records, I have learned that:

        a. Victim-3, Victim-5, and Victim-6 each separately met GINA GUY, the defendant, in person. Victim-4 met GUY on an online dating website. Each of these victims exchanged contact information with GUY, and GUY thereafter maintained regular contact with them, principally in person and by telephone.

        b. In total, from at least in or about 2020 to at least in or about May 2024, GUY defrauded Victim-3, Victim-4, Victim-5, and Victim-6 of at least $908,000 based on GUY's false representations, including that GUY needed funds for medical procedures and that GUY could assist Victim-6 by helping him move his money to another bank that offered a better interest rate on funds on deposit.

        i. In or about 2020, GUY told Victim-3 that GUY was working at the time in the food industry. Thereafter, GUY told Victim-3 that GUY needed approximately $61,000 for a kidney transplant. Based on that representation, Victim-3 then wired the requested amount from his bank account, located in Manhattan, to a bank account registered in GUY's name and with GUY's date of birth and social security number, on the express condition that GUY repay the money to Victim-3. Based on my review of bank records, from at least in or about 2020 to at least in or about 2021, GUY subsequently spent the money on non-medical personal expenses, including expensive meals, utilities, apartment rent, and luxury goods. GUY has only repaid Victim-3 approximately $1,200 of the money that GUY owes Victim-3.

        ii. In or about 2021, GUY told Victim-4 that GUY was working at the time as a nanny and also had a second job. Thereafter, GUY told Victim-4 that GUY needed money because she was experiencing problems with her kidneys. Based on that representation, Victim-4 provided GUY with checks totaling approximately $60,000. Based on my review of relevant bank records, GUY deposited the check into a bank account registered in GUY's name and with GUY's date of birth and social security number, and GUY subsequently spent the money on non-medical personal expenses, including expensive meals, utilities, apartment rent, and luxury goods.

        iii. In or about 2022, GUY also told Victim-5 that GUY needed tens of thousands of dollars for a kidney transplant. Victim-5 wrote a check payable to "Gina Guy" in the amount of approximately $50,000 with the word "Loan" in the subject line, which Victim-5 gave to GUY on the understanding that GUY would pay Victim-5 back. Based on my review of bank records, GUY deposited the check into a bank account registered in GUY's name and with GUY's date of birth and social security number, and subsequently spent the money on non-medical personal expenses, including expensive meals, utilities, apartment rent, and luxury goods. GUY has not repaid any of the money she owes to Victim-5. GUY told Victim-5 that GUY has a lawsuit against the doctor who performed her kidney operation and when the lawsuit is settled, GUY will be able to repay Victim-5.

        iv. In or about mid-2022, GUY told Victim-6 that GUY ran a catering business. Thereafter, GUY told Victim-6 that GUY needed tens of thousands of dollars for a kidney transplant, and also told Victim-6 that she could help him move his money from his current

bank to another bank that offered higher interest rates, so that Victim-6 could maximize the returns on his funds on deposit. Based on those representations, from in or about 2022 until in or about 2024, Victim-6 provided GUY with approximately $30,000 for a kidney transplant and approximately $708,000, which Victim-6 did by issuing checks to GUY, which GUY deposited into bank accounts registered in GUY's name and with GUY's date of birth and social security number. Based on my review of bank records, from at least in or about 2022 to at least in or about 2024, GUY subsequently spent the money on non-medical personal expenses, including expensive meals, utilities, apartment rent, and luxury goods.

### Scheme to Defraud Victim-7

14. Based on my interviews with another elderly male ("Victim-7") and witnesses, my discussions with other law enforcement officers, my review of law enforcement databases, reports, and records, and my review of bank and telephone records, I have learned that:

      a. In or about late 2021, Victim-7 met GINA GUY, the defendant, in person in Manhattan, exchanged contact information with GUY, and communicated with GUY principally in person and by telephone.

      b. After communicating for several weeks, GUY introduced Victim-7 to GUY's purported sister, "Rose Geller," later identified as ROSANNA LISA STANLEY, the defendant. *See infra* ¶ 15(d). GUY and STANLEY told Victim-7 that they were in the catering business.

      c. Subsequently, GUY and STANLEY met with Victim-7 in person, stated that GUY and STANLEY wanted to buy a dress-making business in New York City, and asked Victim-7 for a loan of approximately $114,000. GUY and STANLEY instructed Victim-7 to withdraw a portion of the loan money from Victim-7's bank account in cash increments of under $10,000 each, which Victim-7 did from Victim-7's bank account, located in Manhattan, before turning the cash over to GUY and STANLEY on different occasions. In addition, on GUY and STANLEY's instructions, Victim-7 wired approximately $30,000 of loan money to GUY and STANLEY for the dress-making business in increments under $10,000, from another one of Victim-7's bank accounts, located in Manhattan, to a bank account registered with GUY's name, date of birth, and social security number. GUY and STANLEY communicated with Victim-7 by telephone on multiple occasions to discuss their purportedly dire financial need and the loan arrangements. Victim-7 lent GUY and STANLEY money on the express condition that GUY and STANLEY would repay the loan to Victim-7. GUY has repaid Victim-7 only approximately $1,200 of the money that GUY and STANLEY owe Victim-7.

      d. GUY and STANLEY also repeatedly requested that Victim-7 loan them money for other purposes, including to pay their rent and living expenses. On one occasion, GUY and STANLEY requested a loan of approximately $77,000, and instructed Victim-7 to withdraw the loan money from Victim-7's bank account in cash increments of under $10,000 each, which Victim-7 did before turning the cash over to GUY and STANLEY. Several times, GUY went to the bank, located in Manhattan, with Victim-7 to make cash withdrawals from Victim-7's bank account. Thereafter, Victim-7 would turn over the cash to GUY or to STANLEY. Victim-7 provided GUY and STANLEY with the requested funds on the express condition that they repay the loans. GUY and STANLEY communicated with Victim-7 by telephone on multiple occasions

to discuss their purportedly dire financial need and the loan arrangements. GUY and STANLEY have not repaid any portion of those loans, despite Victim-7's requests for repayment.

          e.      Based on my training and experience, as well as my participation in this investigation, I believe that GUY and STANLEY instructed Victim-7 to make large cash withdrawals, each for an amount under $10,000, to avoid triggering any suspicious activity alerts. I am aware that, in the United States, financial institutions are required by law to report to the government all cash transactions in excess of $10,000, and the purpose of that reporting obligation is to provide notice to government officials of potentially suspicious cash transactions. In my training and experience, individuals engaged in criminal activity like those charged in Counts One through Five of this Complaint know that a cash withdrawal over $10,000 will trigger a financial institution's obligation to file a report, and those individuals typically seek to avoid the report by withdrawing a sum in excess of $10,00 through multiple withdrawals that are each below $10,000.

          f.      In early 2022, GUY called Victim-7, indicated that STANLEY was ill and needed a liver transplant, and asked for $50,000 for STANLEY's medical expenses. Victim-7 refused to provide the money, and telephonic contact between GUY, STANLEY, and Victim-7 subsequently diminished.

          g.      From at least in or about 2021 through at least in or about 2024, based on the false representations of GUY and STANLEY, Victim-7 made wire transfers that were deposited into bank accounts held in the name of GUY. The date of birth, address, and social security number associated with the holder of that bank account match the date of birth, address, and social security number associated with GUY in law enforcement records, reports, and databases. In total, GUY defrauded Victim-7 of at least approximately $185,000.

### Identification of ROSANNA LISA STANLEY and GINA GUY

    15.      Based on my interviews with the Victims and witnesses, my review of bank records, Florida Department of Motor Vehicle ("DMV") records, law enforcement records, reports, and databases, my conversations with other law enforcement officers, and my participation in this investigation, I have learned that:

          a.      Victim-1 has a photograph of himself and a woman ("Photograph-1"), who was identified as "Rose," the woman with whom Victim-1 believed Victim-1 had been in a relationship and to whom Victim-1 has provided hundreds of thousands of dollars, as described above. *See supra* ¶¶ 10-11. Based on my comparison of the woman depicted in Photograph-1 with surveillance footage of ROSANNA LISA STANLEY, the defendant, conducting in-branch bank transactions for bank accounts held in STANLEY's name, a photograph of STANLEY from STANLEY's driver's license (the "Stanley DMV Photograph"), shown below, and law enforcement photographs of STANLEY found in her criminal history records, I believe "Rose" is the same individual as STANLEY.

          b.      During an interview of Victim-2, law enforcement showed Victim-2 the STANLEY DMV Photograph and asked if Victim-2 could identify the person depicted in the photograph. Victim-2 identified the woman as "Hannah Stanley," the person who provided purported "psychic" services to Victim-2 and to whom Victim-2 had provided money as described above. *See supra* ¶ 12.

c. During my interview of Victim-7, I showed Victim-7 the STANLEY DMV Photograph and asked if Victim-7 could identify the person depicted in the photograph. Victim-7 identified the woman as "Rose Geller," the sister of the woman with whom Victim-7 believed that Victim-7 was in a relationship and to whom Victim-7 had provided money as described above. *See supra* ¶ 14.



STANLEY DMV Photograph

16. Based on my interviews with the Victims and witnesses, my review of bank records, Nevada DMV records, law enforcement records, reports, and databases, my conversations with other law enforcement officers, and my participation in this investigation, I have learned that:

a. During my interview of Victim-3, I showed Victim-3 the photograph of GUY from GUY's driver's license (the "GUY DMV Photograph"), shown below, and asked if Victim-3 could identify the person depicted in the photograph. Victim-3 identified the woman as "Gina Guy," the person with whom Victim-3 believed that Victim-3 was in a relationship and to whom Victim-3 had provided money as described above. *See supra* ¶ 13(a)-(b), (f)-(g).

b. During my interview of Victim-4, I showed Victim-4 the GUY DMV Photograph, and asked if Victim-4 could identify the person depicted in the photograph. Victim-4 identified the woman as "Gina Guy," the person with whom Victim-4 believed Victim-4 had been in a relationship and to whom Victim-4 had provided money as described above. *See supra* ¶ 13(a), (c), (f), (h).

c. During my interview of Victim-6, Victim-6 identified at least two photographs of himself and a woman ("Photograph-2" and "Photograph-3"), whom Victim-6 identified as "Gigi," the person with whom Victim-6 believed Victim-6 had been in a relationship and to whom Victim-6 had provided money as described above. *See supra* ¶ 13(a), (e), (f), (j). Based on my comparison of the woman depicted in Photograph-2 and Photograph-3 with surveillance footage of GUY conducting in-branch bank transactions for bank accounts held in GUY's name, state DMV records, and law enforcement photographs of GUY found in her criminal history records, I believe "Gigi" is the same individual as GUY.

    d. During my interview of Victim-7, Victim-7 identified the individual depicted in the GUY DMV Photograph, as "Gigi," and identified the individual depicted in the GUY DMV Photograph, as a woman with whom Victim-7 believed he had a relationship and to whom he had provided substantial sums of money.  *See supra* ¶ 14.



GUY DMV Photograph

   WHEREFORE, I respectfully request that warrants be issued for the arrests of ROSANNA LISA STANLEY and GINA GUY, the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

           *s/ Richard Smythe by the Court with permission*
           RICHARD SMYTHE
           Special Agent
           Federal Bureau of Investigation

Sworn to me through the transmission
of this Complaint by reliable electronic
means (telephone), pursuant to Federal
Rules of Criminal Procedure 41(d)(3) and 4.1,
this 24th day of June, 2024.

_____
THE HONORABLE ROBYN F. TARNOFSKY
United States Magistrate Judge
Southern District of New York